The next case on the docket is People v. John C. Taylor, No. 5-10-161. Ms. Zillow, let's go. May it please the Court? Your Honors, I've requested that we leave the issue of whether this court has jurisdiction. The State and I both agree that under Flowers and Alvarez, Your Honors, do have jurisdiction. So unless there are other questions, I won't talk about that issue further. The other issue in this case is the defendant's guilty plea was not knowing and voluntary because of two instances of ineffective assistance of counsel. First, before the defendant pled guilty to the offense, counsel didn't even interview the complaining witness. The action occurred from the defendant drove up and he allegedly broke a car window on his girlfriend's car, reached in, hit her, then came into her car and stole her purse. That's what she told the police originally. Nobody interviewed her. He went ahead and pled guilty. At sentencing, she tells a whole different story. She said that, no, she was very upset that day and she was on medication. What really happened was that the defendant came up to her car, but it was her brother that broke the car window. The defendant entered the car with permission to get some of his belongings and then he didn't steal the purse. Apparently, she had either put it on the hood of his car or the roof of his car and he drove off with it. Had counsel interviewed her prior to the guilty plea, perhaps they would have gone to trial because she completely changed her story. The other issue is that- Do we know when she changed her story? I'm sorry? Do we know when she changed her story? No, there's the police reports on the day of the incident and then the sentencing hearing are the only two instances in the record of her telling the story. So we really don't know what story she would have told before the plea? No, because counsel didn't interview her. I mean, had he interviewed her, at least he would have known what story. Counsel also did not explain the difference between the negotiated guilty plea and an open plea to defendant. Prior to defendant's plea, the state offered first eight years, then seven and a half years. Defendant turned those down, but in his mind, he thought the state was limited to asking for seven and a half years. All the other occasions that defendant, not all the other, but a couple times that he hadn't pled guilty before, they were negotiated pleas. So he didn't understand that the state was not backed by this agreement. Counsel didn't explain that to him. And the court did specifically say to him, though, you understand I can set you up to 15 years? Correct, but that's what had happened in the other cases, too. When there was an agreement, the state's going to recommend X number of years. The court can set you to more, but he was always set to do whatever the state agreed to. And that was what he understood in this case. Are there any other questions? Thank you very much. Thank you very much, Jim. Thank you. May it please the court, counsel, my name is not Tim Tate. My name is Mary Tate. We do have other attorneys in the office. At sentencing, Justice Middendorf had this to say about the defendant. Sometimes when you dry out an alcoholic jerk, you still have a jerk. I just thought that was too good to pass up. Truer words were never spoken. This is a sad case, though. This is an all too typical abused woman who allows a drunken, addicted, violent man back into her life. Not only does the defendant have to live with what he did, but she has to live with it and her children have to live with it. At the time of this incident, Ms. Cox actually called the police from inside her car, called 911. Police arrived. They took pictures of the beating that she had received. She told them that the defendant had kicked in the driver's side window, showered her with glass, that he hit her in the face with a closed fist, knocking her unconscious and leaving her with a severely swollen cheek and eye socket. She said he forced his way into the car, threatened to take her out into the country and kill her. And her brother came to her rescue, took a two-by-four after him, chased him off. The defendant tried to actually run over her brother. Her brother witnessed this, too. He gave his report to the police. Contrary to what the defendant says today here, Ms. Cox did not testify differently at sentencing. She said that the defendant was a walking time bomb when he was on drugs, that he would get mad over nothing. On cross-examination, although she said she wasn't 100 percent sure how the window of the car got broken out, she did agree that the defendant got into the car and started hitting her with his fist. That's at page 133. Question, he knocked you unconscious? Yes. He threatened to take you out of the country and kill you? Yes. She says this isn't the first time that he beat her. So she didn't, she did not change her testimony at sentencing. She changed her testimony at the hearing on the motion to withdraw, guilty plea. In fact, her testimony was so contrary to her police report and to her testimony at sentencing that the trial court cautioned her that she might be subjecting herself to perjury. So this occurred after she found out what sentence he got? Correct. And so it's a little hard to see if she's saying one thing when it happened and she's still saying the same thing when the defendant is being sentenced for this crime, how interviewing her before the plea could have affected anything. And I would note that the record makes it very clear that the police report was in the discovery that the defense counsel read. So he knew what was in the police report. The police report is what the factual basis in the guilty plea is based on and is extremely similar to the victim's testimony at the sentencing hearing. So the defense counsel knew exactly what this victim was going to say. And I would also note that the case cited in the defendant's brief, I believe it was Stephen v. Berry, is a failure to interview a witness before a bench trial. I think that's very, very different than imposing an obligation on a defense counsel to interview witnesses before a guilty plea. Particularly, here's another distinction in Berry, is the witnesses in Berry were people that defense counsel had no idea what they were going to say at trial. In this case, as I said, the police report with Ms. Cox's handwritten statement in it and the pictures of her were in the discovery. So this attorney did know what Ms. Cox was going to say, and he had no obligation to go any farther than that, especially before a plea, which was quite beneficial to the defendant, given the fact that the state was willing to drop three felony charges against him. As to the plea itself, regardless of what the defendant had in his mind, regardless of what he thought was going to happen, the trial counsel could not have been clearer that the defendant could get, he specifically told the defendant that he could be sentenced to any range up to 15 years. The defendant said, I understand the possible penalties. This is a direct quote. If you plead guilty, the only thing that's going to remain for me to do is set your penalty somewhere within the range allowed by law. In your case, it could apparently be anywhere from putting you on probation up to 15 years in the Department of Corrections. Defense counsel testified at the motions withdrawal guilty plea that he definitely would not have told the defendant any specific time frame that he would get. The defendant testified that when he asked Mr. Scott, his defense counsel, about the overt plea, although Mr. Scott didn't go into detail, he said that witnesses would testify on the defendant's behalf, and again, this is a quote from the defendant, hopefully things will end up on the lesser side of the middle. So even there, the defendant is pretty much conceding that he hoped for something. But given the fact that defense counsel very clearly, I mean, excuse me, trial court very clearly told him that he could receive any sentence between four years of actual probation and 15 years, the defendant's supposition, his speculation, his hope that he might get less than seven and a half years is not a basis for effective assistance of counsel. Finally, just very briefly on the sentencing issue, defendant wants one more chance for rehabilitation. This defendant has had task probation and conditional discharge. He has five felonies prior to this one, almost all of which were violent. It's a little hard to tell about the obstruction of justice one, but two misdemeanors. In 2007, he beat up this same victim, tried to run her over, tried to run over her children. One of her children is the defendant's son. He went to prison for that charge and didn't get out until late in, I'm just, you've got an 18-month sentence. I would say he got out in late 2008, and he did this in early 2009. This is a defendant that's had lots and lots and lots of chances, and he is a violent man that has deserved the sentence that he was given, and there is absolutely no reason to think that the sentence should be reduced to a new man. Are there no questions? Thank you. Rebuttal, Ms. Fusco. I want to apologize for misreading what I said when cops testified. That's it. I'm asking those plaintiffs in the department to turn out a compulsive job. That is correct. That's all. Thank you. All right. We'll take this matter under advisement and render a decision in due course, and court's on recess until 11 p.m.